**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,** *ex rel.*
**and NURDEEN MUSTAFA,**

        **Plaintiffs,**

**-vs-**                                            **Case No. 6:10-cv-414-Orl-31DAB**

**SAMIR NAJJAR and LEE NAJJAR,**

        **Defendants.**
_____/

# ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 79) filed by Defendant Samir Najjar, the Motion to Dismiss (Doc. 81) filed by Defendant Lee Najjar, and the response in opposition to both motions (Doc. 92) filed by the Government.

**I.**     **Background**

According to the allegations of the Amended Complaint (Doc. 84), which are accepted as true for purposes of resolving these motions to dismiss, Samir Najjar pled guilty in 2001 to making false statements in connection with a scheme to obtain improper reimbursements for medical services to government entities. As part of his plea agreement in that criminal case, Samir Najjar agreed to pay a total of $5 million in restitution and forfeiture to victims of the scheme, which included CHAMPUS, a federally administered health benefits program, and private insurance companies. The payments were to be made to the United States Attorney's Office for the Middle District of Florida. The obligation to make the payments was incorporated into the judgment.

Samir Najjar paid approximately $1.65 million to the Government before sentence was imposed, but has paid virtually nothing since. In 2004 and 2005, Samir Najjar told the Government that he lacked the means to make payments and submitted financial disclosures to that effect. As of September 2011, he continues to owe approximately $3.35 million, excluding interest.

In the instant complaint, the Government alleges that Samir Najjar, with the help of his brother, co-defendant Lee Najjar, hid his control of numerous parcels of valuable real estate and other assets and submitted false statements to the Government to avoid having to pay the $3.35 million. In Count I of the instant complaint, the Government alleges that the brothers' actions violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*[1] In Count II, the Government alleges that the brothers committed fraud, and in Count III, the Government alleges that the brothers conspired to commit fraud.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the

---

[1] The parties agree that the 2006 version of the False Claims Act applies to this case. Accordingly, all citations in this opinion are to the 2006 version of the act.

Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.  Analysis**

    **A.  The False Claims Act**

The Defendants argue that the False Claims Act (henceforth, the "FCA") does not apply here because the Government is not attempting to collect a debt owed to it. Rather, they characterize the sum at issue – the remaining $3.35 million owed as a result of Samir Najjar's

guilty plea and conviction – as a private debt, which the Government was attempting to collect so as to pass on to the victims rather than for the benefit of the Government itself. The particulars of what would have happened to that money are not entirely clear from the Amended Complaint. However, even assuming *arguendo* that the entirety of the $3.35 million would have been passed onto third parties, the Defendants' argument nenetheless fails.

The FCA imposes liability upon any person who knowingly submits false or fraudulent claims to the Government for payment. 31 U.S.C. § 3729(a)(1)(A). In addition, the so-called "reverse false claims" provision of the FCA permits the Government, or a private citizen acting on its behalf, to sue to recover monies from any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7). *See also Barber v. Paychex, Inc.*, 439 Fed.Appx. 841, 842 (11th Cir. 2011).

In *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039, 1040 (10th Cir. 2004), the United States Court of Appeals for the Tenth Circuit addressed an analogous situation in an FCA case, one involving allegations that the defendant had been underpaying the royalties it owed on oil and gas leases between itself and an Indian tribe. The payments were made to the Department of the Interior, which acted as a fiduciary for the tribe. *Id.* As in this case, the defendant argued that the FCA did not apply because the Government was simply acting as a collection agent for a third party. *Id.* at 1347. The *Kenard* court rejected the argument:

> [T]he text [of Section 3729(a)(7)] broadly encompasses the fraud on the Government that occurs when a person or entity makes a false statement to the Government in order to decrease an obligation to transmit money to the

> Government. The *transmission* of funds to the Government is enough; there is no requirement in the text that the Government have an ongoing interest in the funds or that the Government itself suffer a loss. . . . [W]hat the Government does with the royalties after they are deposited in the Treasury is of no consequence in the context of a qui tam suit.

*Id*. (emphasis in original).

The Amended Complaint includes allegations that the Defendants made false statements to avoid having to transmit the $3.35 million to the Government. Such allegations fall within the reverse false claim provisions of the FCA, regardless of the ultimate destination of those funds.

### B. Compliance with Rule 9(b)

The Defendants also argue that the Amended Complaint must be dismissed because the Government has failed to plead its claims with sufficient specificity. Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). However, intent may be averred generally. *Id.* Rule 9(b) applies to FCA cases. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). To state a claim under the False Claims Act that complies with Rule 9(b), "the complaint must allege '"facts as to time, place, and substance of the defendant's alleged fraud," [and] "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."'" *Id.* (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, Inc., 290 F.3d 1301, 1310 (11th Cir.2002)).

Upon review of the Amended Complaint, the Court concludes that the Government has satisfied Rule 9(b) both as to Count I and Count II. As alleged frauds go, the scheme outlined in the Amended Complaint was fairly simple: To avoid having to pay the remaining $3.35 million owed by Samir Najjar, the Defendants hid assets in the name of Lee Najjar (or companies

controlled by him) and his wife's name and falsely certified to the Government that Samir Najjar had no means to pay off the debt. The Government identifies several pieces of real estate that were transferred from Samir Najjar to his wife or to Lee Najjar within days or weeks of his guilty plea. The Government also alleges that an LLC registered to Lee Najjar (but having no staff and no legitimate business operations) purchased a million-dollar house in Orlando a few days before the guilty plea, and that Samir Najjar and his family used the house as a personal residence for the next seven years.[2] A financial disclosure statement made by Samir Najjar in May 2004 to the United States Probation Office is dissected in some detail in the Amended Complaint, with the Government pointing out such things as Samir Najjar certifying that he could not recall disposing of any assets worth more than $2,500 in the previous years, just three months after selling a piece of real estate for $700,000, and two years after selling a different piece of property for $1.2 million. The Government also notes that, in the May 2004 disclosure, Samir Najjar certified that he did not possess any vehicles, and that he was not aware of anyone holding money or property for him. However, at that time, two cars were registered at Samir Najjar's home address – a Lexus titled in the name of a company owned by Lee Najjar and a Mercedes-Benz titled in Lee Najjar's name.

And the Amended Complaint does not stop there. Among other things, the Government has described additional ways in which the May 2004 disclosure was misleading, identified other false statements made by Samir Najjar to the Government, and detailed how the brothers as recently as eighteen months ago offered to sell an undercover agent 12 Florida properties worth

---

[2] According to the Amended Complaint, Lee Najjar resides in Atlanta.

millions of dollars.  The details provided sufficiently describe the time, place, and substance of the brothers' alleged fraudulent misdeeds, and permit a reasonable inference that they are liable.  Rule 9(b) is satisfied.

### C.    Statute of Limitations

Lee Najjar contends that, as to him, this suit was not timely brought.  The Amended Complaint, which first named Lee Najjar as a defendant, was filed in October 2011.  Within the Amended Complaint, the Government has alleged that Lee Najjar, as part of the May 2004 financial disclosure, falsely certified that for the previous month he had only provided his brother with $1,200 in support.  Lee Najjar asserts that this is the "most recent false statement" that he is alleged to have made, that it was made more than seven years before suit was filed against him, and that therefore the FCA's six-year statute of limitations has run.

Lee Najjar is incorrect.  The FCA provides that suit must be brought within the later of either (1) six years from when the violation occurred or (2) three years after the pertinent Government official knew or should have known of the violation.  31 U.S.C. § 3731(b).  In the latter circumstance, suit must be brought not more than ten years after the violation occurred.  31 U.S.C. § 3731(b)(1)(2).  Even if the Government were to rely on the May 2004 statement as the operative date for purposes of the statute of limitations, there is nothing within the Amended Complaint that suggests that the relevant official knew or should have known of the statement's falsity on the day it occurred, or more than three years prior to the filing of the Amended Complaint.  Under those circumstances, the statutory period would be ten years, not six, and the October 2011 filing would be timely.

Even if the six-year period applies here, the Amended Complaint alleges that Lee Najjar submitted false statements in support of his brother's monthly reports to the Probation Office, which he submitted from January 2004 to October 2006.  Although the Amended Complaint does not explicitly assert that any particular report included a false statement from Lee Najjar, it is reasonable to infer that at least one of the monthly reports filed within the six-year period concluding October 2011 did include such a statement.  The Government asserts in the Amended Complaint that false and misleading letters signed by Lee Najjar accompanied "many" of Samir Najjar's monthly reports.  On this record, the Court finds that the Defendant has not carried his burden of establishing that the statute of limitations applies.

The Defendants make other arguments in favor of dismissal, but after consideration, the Court finds that they do not merit discussion.

## IV.   Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 79) filed by Defendant Samir Najjar and the Motion to Dismiss (Doc. 81) filed by Defendant Lee Najjar are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 23, 2012.

                                                    GREGORY A. PRESNELL
                                                    UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party