## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA and**
**NURDEEN MUSTAFA,**

      **Plaintiffs,**

**v.**                                                       **Case No:  6:10-cv-414-Orl-31DAB**

**SAMIR NAJJAR and LEE NAJJAR,**

      **Defendants.**

## ORDER

This matter comes before the Court after a hearing on the United States' Motion to Enforce Settlement Agreement (Doc. 134), the responses (Doc. 137, 138) filed by the Relator, Nurdeen Mustafa ("Mustafa") and by Defendant Samir Najjar, respectively, and the reply (Doc. 142) filed by the United States.

    **I.**    **Background**

The following facts in this False Claims Act case are undisputed.  Defendant Samir Najjar pleaded guilty to fraud in 2001.  As part of his plea agreement, Samir Najjar agreed to pay the Government $5 million.  He paid approximately $1.65 million at the time he was sentenced.  In the years since, he has informed the Government that he has no assets with which to pay the remaining $3.35 million plus interest.

According to the allegations of the instant *qui tam* complaint (Doc. 84), Samir Najjar and his brother, Defendant Lee Najjar, worked together to hide Samir Najjar's assets from the Government.  Specifically, it is alleged that before his sentencing, Samir Najjar transferred a number of valuable parcels of real estate to his brother (or companies controlled by his brother),

and that since that time his brother has allowed him the use of those properties or sold them at his direction.

Some time after the instant complaint was filed, the Government entered into settlement negotiations with the Relator and Samir Najjar.  On December 17, 2012, the Government sent a proposed settlement agreement to counsel for Mustafa and counsel for Samir Najjar.  The agreement contemplated, among other items, a guilty plea in a related criminal case by Samir Najjar, the entry of a consent judgment against him, and the execution of a release by Mustafa in his favor.[1]  The next day, Mustafa's attorney, Lorenzo Cellini, responded by email that "[w]e agree to the revised settlement and consent judgment you sent yesterday."  The Government contends that this communication constituted acceptance of the agreement and that Mustafa is bound by its terms.  Mustafa contends the agreement was not binding on him until he signed it, that he subsequently changed his mind, and that he is not bound by his earlier acceptance.

As Mustafa points out, in interpreting an agreement, "the parties' intent, of course, is what ultimately controls."  (Doc. 137 at 2).  *See Lifecare Int'l Inc. v. CD Med., Inc.*, 68 F.3d 429, 436 (11th Cir. 1995).  However, contrary to the argument made by Mustafa's counsel, there is no evidence that the parties here did not intend to be bound until the agreement had been signed.

Mustafa points to two provisions of the proposed agreement that, in his view, demonstrate such an intent.  The first provision reads as follows:

> This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

The second passage at issue reads:

> This agreement is effective on the date of the signature of the last signatory to the agreement (Effective Date of this Agreement)".

---

[1] Lee Najjar was not a party to the settlement agreement.

The first provision is a fairly standard integration clause. Nothing about it suggests that the parties understood that the settlement agreement could not be accepted in this fashion – *i.e.*, via an email from the party's attorney.[2] To the contrary, it suggests that a writing such as the email sent by Mustafa's attorney on December 18, 2012 was contemplated by the parties from the outset as a method of manifesting assent in regard to the agreement. As for the second passage, by its plain terms it defines the date on which the agreement takes effect rather than – as Mustafa would have it – the method by which the agreement can be accepted.

In addition, the statement by Mustafa's attorney on December 17, 2012 – "We agree to the revised settlement agreement and consent judgment you sent yesterday" – suggests the opposite of what Mustafa now argues. It is impossible to interpret that statement as indicating anything other than an intent to accept and be bound by the latest version of the settlement agreement. Implicit in the making of such a statement is a belief that one can, in fact, accept the agreement in that fashion.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Enforce Settlement Agreement (Doc. 134) is **GRANTED**. Relator Nurdeen Mustafa is bound by the settlement agreement in the same manner and to the same extent as if he had signed it. And it is further

---

[2] Mustafa does not argue that the attorney who sent the email lacked the authority to accept the agreement on his behalf.

**ORDERED** that upon notification to the Court of the acceptance of the plea in *United States v. Samir Najjar*, 8:13-cr-46-T30EAJ, the Court will enter the consent judgment attached as Exhibit A to the settlement agreement and dismiss the Relator's complaint with prejudice.[3]

**DONE** and **ORDERED** in Orlando, Florida on March 15, 2013.

*[signature]*
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[3] The dismissal will not affect any claims the Relator may have for a share or for attorney's fees under 31 U.S.C. § 3730(d).